BEFORE THE
UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEAH STEEL CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant. | Court No. 19-00086 |

COMPLAINT

Plaintiff SeAH Steel Corporation ("Plaintiff"), files this complaint to contest the final determination by the U.S. Department of Commerce ("Commerce") in the administrative review of the antidumping order on Certain Oil Country Tubular Goods ("OCTG") from Korea for the September 1, 2016, to August 31, 2017, review period.

JURISDICTION

1. This action arises out of an antidumping duty administrative review conducted by Commerce pursuant to Section 751 of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1675.  Commerce published notice of the final results of the review in the *Federal Register* on May 24, 2019.  *See Certain Oil Country Tubular Goods from the Republic of Korea: Final Results of the Antidumping Duty Administrative Review; 2016-2017,* 84 Fed. Reg. 24085 (May 24, 2019) (hereinafter referred to as the "*Final Results*").

2. This action is commenced pursuant to Sections 516A(a)(2)(A) and (B)(iii) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. §§ 1516a(a)(2)(A) and (B)(iii).  Consequently, this Court has jurisdiction over this matter by reason of 28 U.S.C.

§ 1581(c), which confers upon the Court exclusive jurisdiction over civil actions commenced under Section 516A of the Act.

## PLAINTIFF'S STANDING TO COMMENCE THIS ACTION

3.  Plaintiff is a producer and exporter of OCTG from Korea, the subject merchandise at issue in this appeal. Plaintiff participated as a respondent in the administrative review of the antidumping order that is the subject of this appeal. Accordingly, Plaintiff is an "interested party" within the meaning of Section 771(9)(A) of the Act, as amended 19 U.S.C. § 1677(9)(A), and has standing to commence this action pursuant to Section 516A(d) of the Act (19 U.S.C. § 1516a(d)) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4.  On May 24, 2019, the *Final Results* were published in the Federal Register. *See Certain Oil Country Tubular Goods from the Republic of Korea: Final Results of the Antidumping Duty Administrative Review; 2016-2017,* 84 Fed. Reg. 24085 (May 24, 2019).

5.  On June 3, 2019, Plaintiff initiated this action by filing a summons and this complaint within the time specified by Section 516A(a)(5) of the Act, 19 U.S.C. § 1516a(a)(5), which permits parties to challenge the final results of administrative reviews of antidumping orders by filing a summons within 30 days after publication of the final results, and a complaint within 30 days thereafter.

## STATEMENT OF CLAIMS

6.  Commerce's final determination in the administrative review of the antidumping order on OCTG from Korea for the September 1, 2016, to August 31, 2017, review period

was arbitrary and capricious, unsupported by substantial evidence on the record, or otherwise not in accordance with law for the following reasons, among others:

(1) Commerce's adjustment to the cost of hot-rolled steel coils used in its calculation of SeAH's cost of production and constructed value based on its finding that a "particular market situation" existed in Korea is inconsistent with the relevant provisions of the statute, and with this Court's recent decision in *Nexteel Co. v. United States*, No. 17-00091, slip op. at 18 (Ct. Int'l Trade Jan. 2, 2019), and is not supported by substantial evidence on the record.

(2) Commerce's calculation of SeAH's profit included in constructed value improperly relied on outdated information from a market that was not viable during the period of review when more contemporaneous information from sales in the global market were submitted to Commerce.

(3) Commerce's use of an "average-to-transaction" comparison methodology to determine the dumping margins during the review period was not consistent with the statutory conditions for the use of such a methodology, because, *inter alia*, Commerce's decision was based on an analysis that: (i) utilized arbitrary thresholds and cut-offs that were neither adopted through a notice and comment rulemaking procedure nor supported by an analysis of the evidence on the record of the specific proceeding, (ii) failed to provide the adequate explanation required by the statute as to why the normal average-to-average methodology could not address the alleged "pattern" of price differences Commerce claimed to have identified, and (iii) improperly treated negative dumping margins found for

individual transactions as if they were zero margins for purposes of calculating the overall weighted-average dumping margin for SeAH.

(4) Commerce improperly "capped" the adjustment to SeAH's U.S. prices for freight revenue where the amount charged to customers for freight exceeded the actual freight costs incurred on the relevant sale (thus failing to take into account the full sales revenue received on the transaction) on the theory that the freight revenue constituted a separate sale of services, even though Commerce did not limit the adjustment for freight costs incurred where those costs exceeded the amount charged to the customer for freight.

(5) Commerce improperly classified general and administrative expenses incurred by SeAH's U.S. affiliate Pusan Pipe America, Inc., as selling expenses to be deducted from the calculation of Constructed Export Price, in contravention of the statute, Commerce's own past decisions, and generally recognized accounting principles.

(6) Commerce improperly included inventory valuation losses for raw materials and work-in-process in its calculation of SeAH's general and administrative expenses in contravention of its prior decisions, resulting in a double counting of those costs.

(7) Commerce improperly included a penalty imposed by the Korea Fair Trade Commission in its calculation of SeAH's general and administrative expenses, even though the penalty was imposed for conduct relating solely to sales of non-subject merchandise for a time period outside the period of review, and was not

related in any way to SeAH's sales or production of OCTG during the review period.

### DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff respectfully requests this Court to:

(1) Declare Commerce's *Final Results* to be arbitrary and capricious, unsupported by substantial evidence, and otherwise not in accordance with law; and

(2) Remand this matter to Commerce for disposition in a manner consistent with the judgment of this Court; and

(3) Provide such other relief as this Court deems appropriate.

        Respectfully submitted,

        /s/Jeffrey M. Winton
        Jeffrey M. Winton
        Amrietha Nellan
        Jordan Fleischer

        LAW OFFICE OF JEFFREY M. WINTON PLLC
        1900 L. St., N.W., Suite 611
        Washington, DC  20036
        (202) 774-5500

        Attorneys for SeAH Steel Corporation

Dated:  June 20, 2019

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the Complaint and Statutory Injunction (Form 24) are being served on this 20th day of June 2019, by certified mail, return-receipt requested, on the following parties:

Hardeep K. Josan
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza - Room 346
Civil Division
New York, NY 10278

Joel D. Kaufman, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795

Donald B. Cameron, Esq.
Morris, Manning & Martin, LLP
1401 I Street, NW
Suite 600
Washington, DC 20005

J. David Park, Esq.
Arnold & Porter LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743

Thomas M. Beline, Esq.
Cassidy Levy Kent (USA) LLP
900 19th Street, NW, Suite 400
Washington, DC 20006

Alan H. Price, Esq.
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

Roger B. Schagrin, Esq.
Schagrin Associates
900 7th Street, NW, Suite 500
Washington, DC 20001

Gregory J. Spak, Esq.
White & Case LLP
701 13th Street, NW
Washington, DC 20005

Jarrod M. Goldfeder, Esq.
Trade Pacific PLLC
660 Pennsylvania Ave, SE
Suite 401
Washington, DC 20003

                                        /s/ Jeffrey M. Winton
                                          Jeffrey M. Winton