UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| SEAH STEEL CORPORATION et al., <br><br> *Plaintiff and Consolidated Plaintiffs*, <br><br> HYUNDAI STEEL COMPANY and ILJIN STEEL CORPORATION, <br><br> *Plaintiff-Intervenors*, <br> v. <br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> UNITED STATES STEEL CORPORATION et al., <br><br> *Defendant-Intervenors*. | Court No. 19-00086 (consol.) |

# REMAND COMMENTS OF CONSOLIDATED PLAINTIFF NEXTEEL CO., LTD.

| | |
|---|---|
| ARNOLD & PORTER KAYE SCHOLER LLP <br> 601 Massachusetts Avenue, N.W. <br> Washington, D.C. 20001 <br> Phone: (202) 942-5000 <br> Fax: (202) 942-5999 | J. David Park <br> Henry D. Almond <br> Daniel R. Wilson <br> Leslie C. Bailey <br> Kang Woo Lee <br><br> *Counsel to NEXTEEL Co., Ltd.* <br> *Consolidated Plaintiff* |

**Dated: August 13, 2021**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................... ii

**I.     INTRODUCTION** .......................................................................................................1

**II.    ARGUMENT** ..............................................................................................................3

      **A.     The *Remand Results* Do Not Comply with the Court's Order Regarding the Reallocation of Suspension Loss Costs to NEXTEEL's G&A Expenses** ..................................................................................................3

**III.   CONCLUSION** ..........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Dillinger France S.A. v. United States*,
 981 F.3d 1318 (Fed. Cir. 2020) ..................................................................................2, 3

**Federal Statutes**

19 U.S.C. § 1677b(f)(1)(A) ..........................................................................................4, 5, 7

**Commerce Determinations**

*Certain Pasta from Italy: Final Results of Antidumping Duty Administrative
 Review; 2014-2015*, 81 Fed. Reg. 91,120 (Dep't Commerce Dec. 16, 2016) ...........................6

*Certain Polyester Staple Fiber from Korea: Final Results of the 2005-2006
 Antidumping Duty Administrative Review*, 72 Fed. Reg. 69,663 (Dep't
 Commerce Dec. 10, 2007) .................................................................................................6

## I. INTRODUCTION

Consolidated Plaintiff NEXTEEL Co., Ltd. ("NEXTEEL") respectfully submits these comments on the Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand, July 16, 2021, ECF No. 118 ("*Remand Results*").

As relevant to NEXTEEL, the Court of International Trade ("CIT") remanded three issues to Commerce: (1) to further explain or reconsider Commerce's particular market situation ("PMS") determination and adjustment; (2) to reallocate costs of NEXTEEL's non-prime products based on the actual costs of prime and non-prime products; and (3) to further explain or reconsider Commerce's treatment of NEXTEEL's production line suspension costs. *SeAH Steel Corporation v. United States*, 513 F. Supp. 3d 1367, Slip. Op. 21-43 at 76 (Ct. Int'l Trade 2021) ("*SeAH*").

In the *Remand Results*, Commerce complied only in part with the Court's remand order in *SeAH*. In particular, Commerce complied with the Court's instructions to reconsider or further explain Commerce's particular market situation ("PMS") determination and adjustment, which the Court found unsubstantiated and unreasonable. On remand, Commerce properly determined that, "consistent with the Court's opinion and under respectful protest, we find that the record evidence is insufficient to sustain an affirmative PMS finding." *Remand Results* at 44-45.[1] As

---

[1] As Commerce elaborated, under protest:
> upon review of the evidence on the record of this proceeding, we find that the additional evidence on the record of this underlying proceeding, which the Court has not previously addressed and rejected, as identified in the remand comments by the interested parties, is insufficient, on its own, to sustain a finding of a PMS within the analytical framework that the Court articulated in its opinion in this case. As a result, under protest, we are reversing our finding of a PMS and have removed the PMS adjustment from our margin calculations for SeAH and NEXTEEL.

*Remand Results* at 12-13.

such, Commerce determined (under protest) that no PMS existed in Korea during the POR which distorted the costs of producing subject OCTG, and accordingly recalculated the respondents' weighted-average dumping margins without a PMS adjustment to the COP for the sales-below-cost test. *Id.* at 13.

NEXTEEL submits that this determination is the only possible outcome on this issue that would be consistent with the Court's order. As Commerce plainly admits, the record does not support a PMS determination under the framework set forth in the Court's remand order. Under such circumstances, the only determination supported by the record evidence -- and therefore sustainable by this Court -- is the determination that *no* PMS existed. Commerce has now properly reached that determination in the *Remand Results*, and NEXTEEL respectfully requests that the Court sustain the *Remand Results* on this issue.

On remand, Commerce also reconsidered its treatment of NEXTEEL's costs of production of non-prime pipe, consistent with the Court's order and with the Court of Appeals for the Federal Circuit ("CAFC")'s holding in *Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020). Specifically, the Court remanded Commerce's adjustment of non-prime product costs, based on recorded projected sales prices, for Commerce to determine the actual costs of non-prime products, consistent with *Dillinger*. *SeAH*, Slip. Op. 21-43 at 60-61. Accordingly, Commerce reversed the adjustment to costs of production reported for NEXTEEL's non-prime pipe, which it made in the *Final Results*, and relied on the actual costs of prime and non-prime products as reported by NEXTEEL. *Remand Results* at 14. This treatment of the non-prime costs is consistent with NEXTEEL's reporting in its normal books and records, the statute, the Court's order, and the CAFC's holding in *Dillinger*, in which the CAFC stated that Commerce is required to determine the actual costs of prime and non-prime products. As

Commerce's determination with respect to the non-prime costs in the *Remand Results* is consistent with the Court's order and prior case law, NEXTEEL respectfully submits that the Court should sustain Commerce's remand determination on this issue.

While Commerce complied with the Court's order on these two points, NEXTEEL submits that Commerce's determination in the *Remand Results* with respect to the reclassification of NEXTEEL's costs for losses associated with suspended production continues to be inconsistent with the Court's order and therefore warrants further remand.  For the reasons detailed below, on this issue Commerce's *Remand Results* are unsupported by substantial evidence, fail to comply with the Court's remand order, and must be remanded again to Commerce for reconsideration.

**II.     ARGUMENT**

**A.      The *Remand Results* Do Not Comply with the Court's Order Regarding the Reallocation of Suspension Loss Costs to NEXTEEL's G&A Expenses**

In its Remand Order, the Court determined that Commerce did not "explain the deficiency in NEXTEEL's records that warrants Commerce's departure from the statutory preference for determining costs according to an exporter's or producer's records," and remanded the issue for Commerce to further explain or reconsider.  *SeAH*, Slip. Op. 21-43 at 63.

In the *Remand Results*, Commerce has again failed to identify any deficiency in NEXTEEL's records justifying a departure from the reporting of these costs as COGS in NEXTEEL's normal books in records.  Commerce's lack of any reasonable explanation for continuing to reclassify NEXTEEL's suspension loss costs thus remains unsustainable as Commerce has not pointed to a sufficient basis or "deficiency" in NEXTEEL's records that warrant the reallocation of NEXTEEL's costs.  As one shortcoming of note, Commerce inconsistently refers to the suspensions as "for limited periods during the POR" (*Remand Results*

3

at 15) and "for an extended period of time" (*Remand Results* at 54) further confounding the issue.

Simply put, Commerce has failed to explain how its reallocation of the costs as G&A is consistent with the statute when NEXTEEL did not treat these costs as G&A expenses in its normal books and records and NEXTEEL's records are consistent with Korean GAAP. Commerce stated on remand that:

> Consistent with section 773(f)(1)(A) of the Act, Commerce normally relies on data from a respondent's normal books and records where those records are prepared in accordance with the generally accepted accounting principles (GAAP) of the exporting country and reasonably reflect the costs associated with the production and sales of merchandise. However, in those instances where it is determined that a company's normal books and records do not reasonably reflect the production costs of the merchandise under consideration, Commerce's practice has been to adjust these costs as necessary. In its normal books and records, *NEXTEEL did not allocate the labor and overhead costs related to the suspended lines to its pipe products but recorded the suspension loss directly to COGS*, skipping the assignment of the costs to products and inflating the COGS figure used in the allocation of G&A expenses.

*Remand Results* at 17 (emphasis added). While the *Remand Results* reference the statute and the agency's practice, Commerce's explanation falls short of showing how NEXTEEL's recorded costs related to its suspension of production lines were in any way deficient or inconsistent with the generally accepted accounting principles, such that NEXTEEL's actual costs as reported cannot be used. *See* 19 U.S.C. § 1677b(f)(1)(A) ("Costs shall normally be calcualted based on the records of the exporter or producer of the merchadnise, if such records are kept in accordance with the generally accepted accounting princples of the exporting country . . . and reasonably reflect the costs associated with the production and sale of the merchandise.").

In its normal books and records, NEXTEEL does not allocate the labor and overhead costs resulting from suspension of production to OCTG production (because they are unrelated to the production of OCTG) or as a General and Administrative ("G&A") expense. Indeed, as

4

NEXTEEL explained in the underlying proceeding, NEXTEEL did not account for production costs such as the labor and overhead costs in the reported costs of producing OCTG precisely because "these costs are unrelated to" the production of OCTG. NEXTEEL's Supp Sections A-D Questionnaire Response, C.R. 337, P.R. 192 (June 7, 2018) at SD-8. Again, the statute directs that Commerce calculate costs based on a respondent's records if the records are complaint with GAPP and reasonably reflect production and selling costs of the subject merchandise. As NEXTEEL explained to Commerce, the costs of suspended lines "were transferred directly to COGS in accordance with NEXTEEL's normal accounting treatment." NEXTEEL's Sections C and D Response, C.R. 126, P.R. 96 (Feb. 27, 2018) at D-11. That NEXTEEL reported suspension related costs in accordance with its normal accounting treatment is simply not a sufficient basis to warrant a "departure from the statutory preference for determining costs according to an exporter's or producer's records," as required pursuant to the Court's remand order. *SeAH*, Slip. Op. 21-44 at 63.

Parties do not dispute the fact that NEXTEEL's costs are kept in accordance with Korean GAAP. Then the relevant question is whether NEXTEEL's costs "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A). As NEXTEEL has reiterated throughout this proceeding, reallocating NEXTEEL's production line suspension costs is unreasonable because doing so *reattributes* costs that are not associated with any production to the production of subject merchandise through G&A. Suspended losses are *not* related to the company's overall management of its operations, but rather consist of expenses NEXTEEL incurred unrelated to actual production on specific production lines that were temporarily suspended.

Commerce appears to rely on a conclusion that the suspensions in question in this review are "extended period shutdowns," which in Commerce's view appears to justify the treatment of these costs as G&A expenses rather than production costs. *See Remand Results* at 17-18. In particular, Commerce has branded the suspended lines "idled assets," with no elaboration or explanation of the underlying facts that support its characterization of the suspended lines as "idled assets." In characterizing the production lines as "idled assets," Commerce invokes prior agency practice to assert that "idled assets…represent excess capacity held by the company" and that its "practice has been to include depreciation on idle assets as part of the calculation of the G&A expense ratio." *Remand Results* at 15. However, the prior agency practice cited by Commerce is inapposite to the issue.

In particular, Commerce's reliance on *Certain Pasta from Italy: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 Fed. Reg. 91,120 (Dep't Commerce Dec. 16, 2016) and *Certain Polyester Staple Fiber from Korea: Final Results of the 2005-2006 Antidumping Duty Administrative Review*, 72 Fed. Reg. 69,663 (Dep't Commerce Dec. 10, 2007) is not dispositive. Specifically, in those cases, Commerce addressed the question as to whether depreciation associated with "idled assets" should be included in G&A expenses or excluded altogether from respondents' costs, and pointed to whether the asset or facility had been permanently shutdown (in which situation Commerce indicates the costs would be appropriately excluded). *See Certain Polyester Staple Fiber from Korea: Final Results of the 2005-2006 Antidumping Duty Administrative Review*, 72 Fed. Reg. 69,663 (Dep't Commerce Dec. 10, 2007) and accompanying Issues and Decision Memorandum at Cmt. 8. Although the accounting treatment employed by the respondents in those cases is not entirely clear, in neither case did Commerce appear to address the question of whether costs recorded directly as COGS,

6

consistent with GAAP, were appropriately reclassified as general and administrative expenses. Here, NEXTEEL reported the costs as COGS in its normal books and records in accordance with generally accepted accounting principles. Neither case addresses this situation.

Finally, while NEXTEEL does not disagree that "Commerce may assess the length of a shutdown on a case-by-case basis," *id.* at 54, Commerce has not provided any analysis here that indicates what specific facts were relevant to its determination, or how such a determination would be indicative of whether the costs "reasonably reflect the costs associated with the production and sale of the merchandise," as the statute requires. 19 U.S.C. § 1677b(f)(1)(A). As noted, Commerce in fact variously refers to the suspension as having been "for limited periods during the POR" as well as having been "for an extended period of time," *within the same paragraph*. *Remand Results* at 15-16. These inconsistent references are indicative of a determination that is not well reasoned or explained, and which does not demonstrate reasoned agency practice. Indeed, Commerce states at one point in its determination that "the shutdown started before the POR and continued after the POR," but Commerce has not articulated a standard for differentiating between routine shutdowns (which, in Commerce's view, do not warrant cost reclassification) and more prolonged shutdowns (a situation which Commerce views as appropriate to reclassify costs), and has not done so with reference to the relevant statutory provision. *Remand Results* at 54.

Commerce still has not pointed to anything with specificity to provide clarity as to which production suspensions may be reasonably considered to be "temporary" and which might be considered to go on for an "extended period." Commerce must explain that determination, with reference to the statute and the Court's order, and support it with facts on the record, for its determination to be in accordance with the Court's remand order in *SeAH*. As Commerce did not

7

do so on remand, NEXTEEL respectfully submits that its remand determination on this issue therefore cannot be sustained.

## III. CONCLUSION

For the foregoing reasons, NEXTEEL respectfully requests that this Court affirm the *Remand Results* with respect to the particular market situation determination and treatment of NEXTEEL's non-prime production costs, as the *Remand Results* comply with the Court's order on these issues. At the same time, NEXTEEL respectfully requests that the Court hold Commerce's *Remand Results* to be unsupported by substantial evidence and otherwise not in accordance with law with respect to the allocation of NEXTEEL's costs related to suspension losses. NEXTEEL further requests that this Court again remand the agency's remand determination with instructions to Commerce to correct this error and to provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ J. David Park
J. David Park
Henry D. Almond
Daniel R. Wilson
Leslie C. Bailey
Kang Woo Lee

*Counsel to NEXTEEL Co., Ltd.*

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 942-5000
Fax: (202) 942-5999

**Date: August 13, 2021**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| SEAH STEEL CORPORATION et al., | )<br>)<br>) |
|     *Plaintiff and Consolidated Plaintiffs*, | )<br>)<br>) |
| HYUNDAI STEEL COMPANY and<br>ILJIN STEEL CORPORATION, | )<br>)<br>) |
|     *Plaintiff-Intervenors*,<br>v. | )<br>)   **Court No. 19-00086**<br>)   **(consol.)** |
| UNITED STATES, | )<br>) |
|     *Defendant*, | )<br>) |
|     and | )<br>) |
| UNITED STATES STEEL CORPORATION et al., | )<br>) |
|     *Defendant-Intervenors*. | )<br>) |

## CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)

The undersigned hereby certifies that the attached Remand Comments of Consolidated Plaintiff NEXTEEL Co., Ltd. filed on August 13, 2021, contains 2,285 words, exclusive of counsel's signature block, according to the word count function of the word-processing system used to prepare this memorandum, and therefore complies with the word count limitation set forth in the Court's Chambers Procedures.

By:                                                          /s/ J. David Park
                                                                  J. David Park

**Date: August 13, 2021**