# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION, | ) |
| Plaintiff, | ) |
| AND | ) |
| NEXTEEL CO., LTD., *ET AL.,* | ) |
| Consolidated Plaintiffs, | ) |
| AND | ) Consol. Court. No. 19-00086 |
| ILJIN STEEL CORPORATION, *ET AL.,* | ) |
| Plaintiff-Intervenors | ) |
| V. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| AND | ) |
| UNITED STATES STEEL CORPORATION, *ET AL.*, | ) |
| Defendant-Intervenors. | ) |

## UNITED STATES STEEL CORPORATION'S COMMENTS IN PARTIAL SUPPORT OF REMAND REDETERMINATION

Thomas M. Beline
Myles S. Getlan
James E. Ransdell
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to United States Steel Corporation*

September 15, 2021

**Table of Contents**

|      |                                                                                                                                                    | Page |
|------|----------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | ARGUMENT                                                                                                                                           | 2    |
|      | A.   Standard of Review                                                                                                                            | 2    |
|      | B.   Commerce Appropriately Declined to Use the Unreasonably Allocated Production Line Suspension Costs Reported in NEXTEEL's Books and Records    | 2    |
| II.  | CONCLUSION                                                                                                                                         | 5    |

# Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1516a(b)(1)(B)(i)...................................................................................2

19 U.S.C. § 1677b(a) ...............................................................................................5

19 U.S.C. § 1677b(f)(1)(A).............................................................................. 1, 3-5

Court Decisions

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)...................................................................................................2

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996) ..................................2

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).................................................................2

*LG Chem, Ltd. v. United States*, Ct. No. 20-00096, Slip Op. 21-99 (Ct. Int'l Trade Aug. 13, 2021) ........................................................................... 3-4

*Nakornthai Strip Mill Public Co. Ltd. v. United States*, 587 F. Supp. 2d 1303 (Ct. Int'l Trade 2008).....................................................................................2

*SeAH Steel Corp. v. United States*, Consol. Ct. No. 19-00086, Slip Op. 21-43 (Ct. Int'l Trade Apr. 14, 2021) ......................................................................1

*Tai Shan City Kam Kiu Aluminium Extrusion Co. v. United States*, 125 F. Supp. 3d 1337 (Ct. Int'l Trade 2015) ...............................................................2

*Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008 (Ct. Int'l Trade 1992)...................................................................................................4

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
# BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| AND | )<br>) |
| NEXTEEL CO., LTD., *ET AL.*, | )<br>)<br>) |
| Consolidated Plaintiffs, | )<br>) |
| AND | )<br>) |
| ILJIN STEEL CORPORATION, *ET AL.*, | ) Consol. Court. No. 19-00086<br>) |
| Plaintiff-Intervenors | )<br>) |
| V. | )<br>) |
| UNITED STATES, | )<br>) |
| Defendant, | )<br>) |
| AND | )<br>) |
| UNITED STATES STEEL CORPORATION, *ET AL.*, | )<br>)<br>) |
| Defendant-Intervenors. | )<br>) |

## UNITED STATES STEEL CORPORATION'S COMMENTS IN PARTIAL SUPPORT OF REMAND REDETERMINATION

These comments address one issue raised in Commerce's *Remand Redetermination*, *see* ECF No. 118-1 (July 16, 2021) (P.R.R. 21), namely the proper allocation of NEXTEEL's losses related to the suspension of its production line. As explained below, consistent with the Court's remand instructions in *SeAH Steel Corp. v. United States*, Consol. Ct. No. 19-00086, Slip Op. 21-43, ECF Doc. No. 104 (Apr. 14, 2021) (the "*Remand Order*"), Commerce fully explained why NEXTEEL's books and records did not reasonably reflect the actual costs associated with these losses, thus warranting an adjustment under 19 U.S.C. § 1677b(f)(1)(A). The Court should therefore sustain Commerce's findings on this issue.

With respect to all other issues not directly addressed in these comments or the comments in partial opposition to Commerce's *Remand Redetermination* previously filed by U. S. Steel, U. S. Steel joins and supports the comments being filed by Defendant-Intervenors Maverick Tube Corporation and Tenaris Bay City, Inc.

I.  **ARGUMENT**

   A.  **Standard of Review**

The Court must remand any redetermination on remand that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Commerce's reasonable interpretation of an ambiguous statutory provision is due deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–3 (1984), but deference is only owed where the statute exhibits "genuine ambiguity," *Kisor v. Wilkie*, 139 S. Ct. 2400, 2406 (2019). In addition, "Commerce's results in its redetermination pursuant to court remand are reviewed for 'compliance with the court's remand order.'" *Tai Shan City Kam Kiu Aluminium Extrusion Co. v. United States*, 125 F. Supp. 3d 1337, 1341 (Ct. Int'l Trade 2015) (quoting *Nakornthai Strip Mill Public Co. Ltd. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008)).

   B.  **Commerce Appropriately Declined to Use the Unreasonably Allocated Production Line Suspension Costs Reported in NEXTEEL's Books and Records**

The Court remanded for "further explanation or reconsideration" Commerce's treatment of the costs of NEXTEEL's long-term suspension of production lines as a G&A expense, concluding that Commerce did not fully "explain the deficiency in NEXTEEL's records that warrants Commerce's departure from the statutory preference for determining costs according to

2

an exporter's or producer's records." *Remand Order* at 63.  Implicit in the Court's order is the proposition that the existence of a deficiency suffices to permit Commerce's departure from NEXTEEL's records, a point that the CIT has since made in no uncertain terms.  *LG Chem, Ltd. v. United States*, Ct. No. 20-00096, 2021 Ct. Intl. Trade LEXIS 100, at *18 (Ct. Int'l Trade Aug. 13, 2021) ("Once Commerce concludes that a producer's records do not satisfy one of these conditions {in 1677b(f)(1)(A)}…the statute relieves it of any further obligation to use those records in adjusting costs.").  In its *Remand Redetermination*, Commerce fully explained why relying on the costs reported in NEXTEEL's books and records was inappropriate and why an adjustment was required and fully consistent with 19 U.S.C. § 1677b(f)(1)(A).  *See Remand Redetermination* at 15-18.

Specifically, Commerce explained that once a production line is suspended for non-routine, non-maintenance reasons, those shuttered production lines no longer produce (and are no longer intended to produce) a product that can bear the burden of the costs associated with ownership and upkeep of those production lines.  *Id*. at 16-17.  Instead, Commerce logically reasoned that suspended production lines are akin to idled assets "that relate{} to the general operations of the company as a whole, and not to the manufacture of specific products."  *Id.*  As Commerce explained, its established practice with respect to such idle assets is to include depreciation as part of the G&A expense ratio.  *Id*. at 17.

It is undisputed that NEXTEEL's books and records did not treat these shutdown expenses as part of its overall G&A expenses.  Rather, NEXTEEL included them as part of the cost of sales of the specific products that these shuttered lines were, in fact, no longer producing.  *Id.* at 17.  NEXTEEL's comments in opposition to Commerce's remand results underscore this fact, stating that the "costs {as recorded in its books and records}…are not associated with any

3

production." *See* "Remand Comments of Consolidated Plaintiff NEXTEEL Co., Ltd.," ECF Doc. No. 121 (Aug. 13, 2021) ("NEXTEEL Remand Comments") at 5. In other words, through accounting magic, by treating the costs as product-specific with a production denominator of zero, the costs just vanished into thin air for purposes of the antidumping calculation. NEXTEEL attempts to bog the court down in the semantics of what qualifies as "temporary" and whether it is "entirely clear" that the administrative precedents referenced by Commerce concerned GAAP-compliant accounting. *See* NEXTEEL Remand Comments at 6-7. But, "the burden of creating an adequate record lies with respondents and not with Commerce," *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992), and NEXTEEL's Remand Comments identify nothing *in the record* that calls Commerce's conclusions into question. NEXTEEL's rhetorical questions are not evidence.

Commerce explained that NEXTEEL's preferred allocation is unreasonable because no product was produced while the lines were shuttered, and thus no revenue was generated. *See Remand Redetermination* at 18. Therefore, "the costs associated with the suspended production lines were necessarily covered by all the other products NEXTEEL produced" and thus appropriately reallocated to NEXTEEL's G&A expense, which is allocated across all of NEXTEEL's products, including OCTG. *Id*. As Commerce explained, this adjustment is both reasonable and entirely consistent with 19 U.S.C. § 1677b(f)(1)(A) which instructs that costs should "normally" be calculated based on a company's books and records *only if* those records "reasonably reflect the costs associated with the production and sale of the merchandise." *Id*.; *see also LG Chem*., 2021 Ct. Intl. Trade LEXIS 100, at *19-*20 ("Congress directed Commerce to 'normally' use a respondent's records in calculating costs if two conditions were satisfied. No conclusion can be drawn from the statute other than that if either of those conditions were

4

unsatisfied, Congress desired Commerce to adjust the respondent's costs as necessary (in the Department's discretion) to ensure the most accurate dumping margin."). Regardless of what Korean GAAP *may* permit, it is inherently more accurate to allocate expenses associated with unused assets across operations as a whole—as Commerce did, rather than to jettison those expenses by allocating them to nonexistent production. Because NEXTEEL's ordinary books and records did not reasonably reflect its actual costs, Commerce appropriately adjusted its dumping calculations. 19 U.S.C. § 1677b(f)(1)(A) unambiguously grants Commerce the discretion to undertake this adjustment, and when coupled with the mandate that Commerce undertake a "fair comparison" in the dumping calculation, *id.* § 1677b(a), an adjustment is mandatory as a practical matter. *See also* "United States Steel Corporation's Comments in Partial Opposition to Remand Redetermination," ECF No. 123 (Aug. 13, 2021) at 24-29.

## II. CONCLUSION

In its *Remand Redetermination* Commerce fully explained why the production line suspension losses reported in NEXTEEL's books and records did not reasonable reflect the costs associated with these losses, and why an adjustment was warranted under 19 U.S.C. § 1677b(f)(1)(A). The Court should therefore sustain Commerce's findings on this issue.

Respectfully submitted,

/s/ Thomas M. Beline

Thomas M. Beline
Myles S. Getlan
James E. Ransdell
Nicole Brunda

*Counsel to United States Steel Corporation*

Date: September 15, 2021

## Certificate of Compliance

The undersigned hereby certifies that the forgoing submission of "United States Steel Corporation's Comments in Partial Opposition to Remand Redetermination," filed on September 15, 2021, contains 1,207 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 10,000 word count limitation set forth in rule 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade, after deducting the 8,570 words included in United States Steel Corporation's August 13, 2021, comments in partial opposition to the remand results.

BY: /s/ James E. Ransdell  
James E. Ransdell