UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION,<br><br>    Plaintiff,<br><br>and<br><br>HUSTEEL CO., LTD., NEXTEEL CO., LTD., AND AJU BESTEEL CO., LTD.,<br><br>    Consolidated Plaintiff,<br><br>and<br><br>HYUNDAI STEEL COMPANY, AND ILJIN STEEL CORPORATION<br><br>    Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>UNITED STATES STEEL CORPORATION, MAVERICK TUBE CORPORATION, TENARIS BAY CITY, INC., TMK IPSCO, VALOUREC STAR, L.P., AND WELDED TUBE USA INC.<br><br>    Defendant-Intervenors. | Consol. Court No. 19-00086 |

ORDER

Upon consideration of Plaintiff SeAH Steel Corporation's motion to reconsider this Court's August 26, 2022, judgment sustaining the U.S. Department of Commerce's final results in *Certain Oil Country Tubular Goods From the Republic of Korea*, 84 Fed. Reg. 24,085 (Dep't of Commerce May 24, 2019) (final results of antidumping duty admin. review; 2016–2017), *as amended*, Final Results of Redetermination Pursuant to Court Remand, ECF No. 118-1, and all other papers and proceedings herein, it is hereby

ORDERED that Plaintiff's motion to reconsider is GRANTED, and it is further

ORDERED that this Court's August 26, 2022, judgment affirming Commerce's final results in the 2016-2017 administrative review of the antidumping duty order on oil

country tubular goods from the Republic of Korea, as amended, is RESCINDED; and it is further

ORDERED that the final results, as amended, are remanded to Commerce for further proceedings consistent with this opinion, and it is further

ORDERED that this case will proceeding according to the following schedule:

1. Commerce shall file the remand results on or before January 24, 2023;

2. Commerce shall file the remand administrative record on or before February 7, 2023;

3. Comments in opposition to the remand results shall be filed on or before March 9, 2023;

4. Comments in support of the remand results shall be field on or before April 10, 2023;

5. The joint appendix shall be filed on or before April 24, 2023.

SO ORDERED.

                                                                         Jennifer Choe-Groves, Judge

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SeAH STEEL CORPORATION, )<br>                        )<br>              Plaintiff, )<br>                        )<br>              and )<br>                        )<br>HUSTEEL CO., LTD., NEXTEEL CO., LTD., AND )<br>AJU BESTEEL CO., LTD., )<br>                        )<br>              Consolidated Plaintiff, )<br>                        )<br>              and )<br>                        )<br>HYUNDAI STEEL COMPANY, AND ILJIN STEEL )<br>CORPORATION )<br>                        )<br>              Plaintiff-Intervenors, )<br>                        )<br>              v. )<br>                        )<br>UNITED STATES, )<br>                        )<br>              Defendant, )<br>                        )<br>              and )<br>                        )<br>UNITED STATES STEEL CORPORATION, )<br>MAVERICK TUBE CORPORATION, TENARIS BAY )<br>CITY, INC., TMK IPSCO, VALOUREC STAR, )<br>L.P., AND WELDED TUBE USA INC. )<br>                        )<br>              Defendant-Intervenors. ) | Consol. Court No. 19-00086 |

MOTION FOR RECONSIDERATION

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C. 20036
(202) 774-5500

Attorneys for SeAH Steel Corporation

September 26, 2022

TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................ 2

    A.   Subsequent Decision by the Court of Appeals for the Federal Circuit Rendered Commerce's DPA Unlawful ................................................................ 2

    B.   The Court Erred in Sustaining Commerce's Inclusion of Inventory Valuation Loss Allowances in SeAH's Cost Calculations ................................... 4

CONCLUSION ............................................................................................................ 8

Table of Authorities

Page

COURT DECISIONS

*Corus Staal BV v. United States*,
  29 C.I.T. 777 (2005).................................................................................................. 4

*SeAH Steel Corp. v. United States*,
  513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021) .................................................... 2

*SeAH Steel Corp. v. United States*,
  No. 19-00086, 2022 WL 3701607 (Ct. Int'l Trade Aug. 26, 2022).......................... 2, 5, 6

*Stupp Corp. v. United States*,
  5 F.4th 1341 (Fed. Cir. 2021).................................................................................. 3, 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SeAH STEEL CORPORATION,<br><br>                Plaintiff,<br><br>and<br><br>HUSTEEL CO., LTD., NEXTEEL CO., LTD., AND AJU BESTEEL CO., LTD.,<br><br>                Consolidated Plaintiff,<br><br>and<br><br>HYUNDAI STEEL COMPANY, AND ILJIN STEEL CORPORATION<br><br>                Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>                Defendant,<br><br>and<br><br>UNITED STATES STEEL CORPORATION, MAVERICK TUBE CORPORATION, TENARIS BAY CITY, INC., TMK IPSCO, VALOUREC STAR, L.P., AND WELDED TUBE USA INC.<br><br>                Defendant-Intervenors. | Consol. Court No. 19-00086 |

<u>MOTION FOR RECONSIDERATION</u>

Pursuant to Rule 59(e) of the Rules of the U.S. Court of International Trade, Plaintiff SeAH Steel Corporation hereby requests that the Court reconsider and rescind its August 26, 2022, judgment sustaining the U.S. Department of Commerce's final results in *Certain Oil Country Tubular Goods From the Republic of Korea*, 84 Fed. Reg. 24,085 (Dep't of Commerce May 24, 2019) ("Final Results"), *as amended*, Final Results of Redetermination Pursuant to Court Remand, ECF No. 118-1.

On April 14, 2021, the Court issued an Order and Opinion sustaining in part and remanding in part Commerce's Final Results.[1] In its Order and Opinion, the Court sustained, *inter alia*, Commerce's differential pricing analysis. The Court also remanded, *inter alia*, for Commerce to further explain or reconsider its decision to include SeAH's inventory valuation losses as general and administrative ("G&A") expenses.

Pursuant to the Court's April 14 Order and Opinion, Commerce filed a remand redetermination providing further explanation and justification for its inclusion of SeAH's inventory valuation losses in SeAH's G&A expense ratio.[2] Based on Commerce's further explanation, the Court concluded that substantial evidence supports Commerce's decision and affirmed the Remand Redetermination and issued a final judgment in this matter.[3]

For the reasons set forth below, the Court should reconsider its decision affirming Commerce's differential pricing analysis and decision to include SeAH's inventory valuation losses in SeAH's G&A expense ratio.

ARGUMENT

   A. *Subsequent Decision by the Court of Appeals for the Federal Circuit Rendered Commerce's DPA Unlawful*

The Court's April 14, 2021, decision held that Commerce's differential pricing analysis ("DPA") was lawful. However, after this Court issued its decision in April 2021, the Court of Appeals for the Federal Circuit ("CAFC") called into question the validity of

---

[1] *See SeAH Steel Corp. v. United States*, 513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021).

[2] Commerce's June 30, 2021, Final Results of Redetermination Pursuant to Court Remand. It should be noted that following Commerce's original filing of its Redetermination with this Court on June 30, 2021, a corrected version of the Redetermination was filed on July 9, 2021. Subsequently, a second corrected version of the Redetermination was filed on July 16, 2021 (ECF No. 118) (hereinafter "Remand Redetermination").

[3] *See SeAH Steel Corp. v. United States*, No. 19-00086, 2022 WL 3701607, at *2 (Ct. Int'l Trade Aug. 26, 2022); *see also* Judgment for Slip Op. 22-100 (ECF No. 148).

Commerce's DPA in its application of the Cohen's *d* test to the data in another proceeding involving steel pipe product from Korea and vacated the portion of this Court's decision upholding Commerce's DPA.[4]  The CAFC's decision in *Stupp* granted broad — indeed, in our view, greatly excessive — deference to the Commerce's methodological choices. Nevertheless, it recognized that, when the Commerce purports to apply a mathematical tool, it must apply that tool in a manner consistent with the tool's assumptions.  As the CAFC explained,

> ... Professor Cohen derived his interpretive cutoffs under certain assumptions. Violating those assumptions can subvert the usefulness of the interpretive cutoffs, transforming what might be a conservative cutoff into a meaningless comparator. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014) ("The Nash theorem arrives at a result that follows from a certain set of premises. It itself asserts nothing about what situations in the real world fit those premises. Anyone seeking to invoke the theorem as applicable to a particular situation must establish that fit, because the 50/50 profit-split result is proven by the theorem only on those premises. Weinstein did not do so. This was an essential failing in invoking the Solution.").[5]

The CAFC also concluded that "the evidence and arguments before {the court} call into question whether Commerce's application of the Cohen's *d* test to the data in this case violated the assumptions of normality, sufficient observation size, and roughly equal variances associated with that test."[6]  The CAFC therefore remanded to give Commerce an opportunity to explain "whether the limits on the use of the Cohen's *d* test prescribed by Professor Cohen and other authorities were satisfied in this case or whether those limits

---

[4] *See Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021).

[5] *See id.* at 1360.

[6] *Id.*

- 3 -

need not be observed when Commerce uses the Cohen's *d* test in {antidumping} adjudications."[7]

It should be noted that while the underlying proceeding in *Stupp* involved a different product (Welded Line Pipe from Korea), the CAFC decision was not based solely on the factual record of that proceeding in order to resolve the issue of the validity of Commerce's DPA. Instead, it is clear that the CAFC in *Stupp* took judicial notice of various academic texts to support the conclusion that the Commerce's use of Cohen's *d* was inconsistent with statistical practice.

In other words, while the factual record of this case may differ from that of the proceeding that gave rise to the *Stupp* decision, it is Commerce's DPA methodology, which was applied in both proceedings, that was called into question by the CAFC. Because this Court is bound by precedents set forth by the Court of Appeals for the Federal Circuit,[8] it must reconsider its April 2021 decision sustaining Commerce's DPA and rescind that aspect of its April 2021 decision and remand the case for Commerce to further explain or reconsider its application of DPA in calculating SeAH's dumping margins in this proceeding in accordance with the CAFC decision in *Stupp*.

### B. The Court Erred in Sustaining Commerce's Inclusion of Inventory Valuation Loss Allowances in SeAH's Cost Calculations

It is undisputed on the record of this proceeding that SeAH's cost calculations reflected the full historical cost of the raw-materials and work-in-process inventories used in production.

---

[7] *Id.*

[8] *See, e.g., Corus Staal BV v. United States*, 29 C.I.T. 777 (2005).

As previously explained, SeAH records inventory valuation and cost of purchased raw materials in two separate accounts: 1120603 and 1120601.[9]  As such, when SeAH records an inventory-valuation loss at the end of an accounting period, that loss is recorded as a *credit* to the separate account for "raw material-allowance for valuation loss on inventory" in account 1120603.  The amounts recorded in account 1120603 do not affect the raw-materials inventory values recorded in the account for raw materials inventory (account 1120601).  The amounts recorded in account 1120603 are not used in the calculation of the cost of manufacture in SeAH's normal accounting system or in the calculations submitted in SeAH's questionnaire responses.

On the other hand, if the inventory-valuation loss is reversed at the start of the next period, that reversal is recorded as a *debit* to the separate account for "raw material-allowance for valuation loss on inventory" in account 1120603.  Similarly, the reversal of the inventory-valuation loss does not affect the raw-materials inventory values recorded in the account for raw materials inventory (account 1120601), and it does not affect the calculation of the cost of manufacture in SeAH's normal accounting system or in the calculations submitted in SeAH's questionnaire responses.  Because SeAH's reported costs relied on the full historical cost of the raw-materials and work-in-process inventories, Commerce's inclusion of inventory-valuation losses in calculating SeAH's costs resulted in a double-counting of SeAH's actual cost of materials.

In sustaining Commerce's decision on this issue, the Court relied on Commerce's flawed explanation of SeAH's account of how SeAH's cost of materials was reported.[10]  First, the Court stated that Commerce's response to SeAH's hypothetical example of its

---

[9] *See* SeAH's August 13, 2021, Comments on Commerce's July 16 Redetermination, at 10-11.

[10] *See SeAH Steel Corp.*, 2022 WL 3701607, at *16.

cost and financial accounting treatment of raw material inventory value was not intended to imply that SeAH consumed raw materials at the lower value, but to demonstrate that Commerce's calculation would not double-count costs.[11]  However, the Court ignores the fact that, in order to demonstrate that the costs would not be double-counted, Commerce's hypothetical calculation did assume that the cost calculation used the adjusted "net market value" and not the historical cost.[12]  As a result, Commerce has not provided any explanation how its treatment of SeAH's inventory-valuation losses would not double-count costs when cost of production is based on historical cost.

As mentioned, for every period, SeAH evaluates its inventory and determines whether there is a loss in the valuation of the current inventory and how much that loss is.  If there is a loss in the valuation of raw materials, SeAH will record that valuation loss as a *credit* to the separate account for "raw material-allowance for valuation loss on inventory" in account 1120603, as well as a *debit* to an expense account for "cost difference – raw material" in account 4400104.  The amount recorded in account 4400104 is what is reflected in SeAH's financial statement and what Defendant has relied on to show that an expense was recorded as a result of the recognition of the inventory valuation loss for that period.[13]  The Defendant, however, failed to acknowledge  that the inventory valuation loss recorded in a given period is reversed in the following period.

For every period, SeAH evaluates its inventory and determines how much of an inventory valuation loss there should be on the current inventory, but it already has an

---

[11] *See id.* at *15.

[12] *See* Remand Redetermination at 65 ("As a result, when the raw material is consumed in the new fiscal year at its historical cost of $1000 per ton, it is offset by the $100 inventory valuation gain and, as a result, reflects the net market value of $900.") (ECF No. 118).

[13] Defendant's September 15, 2021, Response to Comments Regarding the Remand Redetermination, at 19 (ECF No. 132).

amount in the "raw material-allowance for valuation loss on inventory" account from the last period.  As a result, SeAH records two entries: one to adjust the balance in the "raw material-allowance for valuation loss on inventory" account from the previous balance to the current balance, SeAH records a *debit* to account 1120603; and the second in the same amount is recorded as a *credit* in "cost difference – raw material" expense account 4400104.  Due to said reversal, the so-called "periodic expenses" relied on by Defendant to argue that "net inventory losses" are periodic expenses unrelated to the inventory consumed in current production are in fact reversed in subsequent accounting periods in SeAH's accounting system.

As such, the Court's acceptance of Commerce's reasoning "…that there is no double-counting of expenses because the net inventory losses recorded on SeAH's GAAP-based audited income statement are periodic expenses related to a change in the value and future utility of currently held inventory and are not related to the inventory consumed in current production" is incorrect and unsupported by the record.[14]

As Commerce themselves recognizes, the inventory valuation adjustment is reversed effectively every period.[15]  The reversal of the inventory valuation adjustment decreases the cost of goods sold in the current period by the amount that was recognized as an inventory valuation adjustment in the prior period.

Furthermore, the sum of the inventory valuation adjustment and the cost of production recognized in SeAH's financial statements has to equal the actual historical cost of the raw materials.  The reversal of the inventory valuation loss in subsequent period is necessary to avoid double counting of inventory valuation loss already recognized in a previous period.

---

[14] *See SeAH Steel Corp.,* 2022 WL 3701607, at *16.

[15] *See* Remand Redetermination at 65 (ECF No. 118).

Because the cost used to value finished inventory flows to cost of goods sold in the period that the merchandise is sold, the double-counting of already recognized loss from a previous period is avoided by the fact that the inventory valuation loss from one period is reversed in the next.

Because SeAH reported full historical cost of the raw-materials and work-in-process inventories used in production which necessarily reflected the full cost of the inventories used in production, including any inventory-valuation adjustments and inventory-valuation losses recorded for those inventories before the inventories were used, Commerce's inclusion of inventory valuation loss in SeAH's cost resulted in impermissible double-counting.  This Court, therefore, should reconsider and reverse its affirmance of Commerce's decision.

## CONCLUSION

For the foregoing reasons, we respectfully request the Court reconsider and reverse its affirmance of Commerce's DPA methodology as well as Commerce's calculation of SeAH's G&A expense ratio that improperly included SeAH's inventory valuation loss allowances.

Respectfully submitted,

/s/Jeffrey M. Winton

Jeffrey M. Winton
Amrietha Nellan
Vi N. Mai

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C. 20036
(202) 774-5500

Attorneys for SeAH Steel Corporation

September 26, 2022