IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____

|  |  |
|---|---|
| SEAH STEEL CORPORATION, | ) |
| Plaintiff, | ) |
| and | ) |
| HUSTEEL CO., LTD., NEXTEEL CO., LTD, and AJU BESTEEL CO., LTD. | ) |
| Consolidated Plaintiffs, | ) Consol. Court No. 19-00086 |
| and | ) |
| HYUNDAI STEEL COMPANY, and ILJIN STEEL CORPORATION, | ) |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| UNITED STATES STEEL CORPORATION, MAVERICK TUBE CORPORATION, TENARIS BAY CITY, INC., TMK IPSCO, VALOUREC STAR, L.P., and WELDED TUBE USA INC., | ) |
| Defendant-Intervenors. | ) |

_____

**DEFENDANT'S RESPONSE IN OPPOSITION TO
<u>SEAH STEEL CORPORATION'S MOTION FOR RECONSIDERATION</u>**

Pursuant to Rule 59 of the Rules of this Court (USCIT R.), defendant, the United States,

respectfully submits this response in opposition to the motion for reconsideration filed by

plaintiff, SeAH Steel Corporation (SeAH), with respect to the Court's judgment and Slip Opinions 2021-43 and 2022-100, dated April 14, 2021 and August 26, 2022, which among other things sustained the Department of Commerce's application of its differential pricing analysis and treatment of SeAH's inventory valuation losses in the final results of the 2016-2017 administrative review of Oil Country Tubular Goods from the Republic of Korea. *See SeAH Steel Corp. v. United States*, 513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021); *SeAH Steel Corp. v. United States*, 2022 Ct. Int'l Trade LEXIS 100, Consol. Case No. 19-00086, Slip. Op. 2022-100 (Aug. 26, 2022). Because SeAH improperly attempts to relitigate this matter and has failed to demonstrate any error, much less a manifest error, in the Court's decision, the Court should deny SeAH's motion.

## **INTRODUCTION**

On April 14, 2021, this Court reversed, in part, and sustained, in part, Commerce's *Final Results*. *See SeAH Steel Corp. v. United States*, 513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021). Among other things, the Court sustained Commerce's application of its differential pricing analysis, including the application of its Cohen's *d* test. *Id*. at 1379-85. Pursuant to the Court's April 14, 2021 Order and Opinion, Commerce filed a remand redetermination that addressed several issues, including providing further explanation and justification for its inclusion of SeAH's inventory valuation losses in SeAH's general and administrative (G&A) expense ratio. *See* ECF 117. The Court sustained the final remand redetermination, including the treatment of SeAH's inventory valuation losses. *SeAH Steel Corp. v. United States*, 2022 Ct. Int'l Trade LEXIS 100, Consol. Case No. 19-00086, Slip. Op. 2022-100 (Aug. 26, 2022).

**ARGUMENT**

I. **Standard Of Review**

Rule 59(a)(2) provides that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." US CIT R. 59(a)(2). The grant or denial of a motion for rehearing and modification pursuant to Rule 59 lies within the sound discretion of the Court. *USEC, Inc. v. United States*, 138 F. Supp. 2d 1335, 1336-37 (Ct Int'l Trade Mar. 29, 2001). Furthermore, "a motion for reconsideration will not be granted merely to give a losing party another chance to re-litigate the case or present arguments it previously raised." *American Nat. Fire Ins. Co. v. United States*, Court No. 00-00022, 2006 WL 2566901 (Ct Int'l Trade Sept. 7, 2006); *see also USEC, Inc.*, 138 F. Supp. 2d at 1337. Rather, the Court's previous decision will not be disturbed unless it is "manifestly erroneous." *USEC, Inc.*, 138 F. Supp. 2d at 1337 (internal citations omitted).

"Circumstances where a court's decision has been found to be [ ] 'manifestly erroneous' include: [ ] (1) an error or irregularity in the trial [ ] [and] (2) a serious evidentiary flaw[.]" *NSK Corp. v. United States*, 593 F. Supp. 2d 1355, 1363 (Ct. Int'l Trade Dec. 29, 2008) (quoting *Starkey Labs., Inc. v. United States*, 110 F. Supp. 2d 945, 947 (Ct. Int'l Trade June 19, 2000) (quoting *Ammex, Inc. v. United States*, 201 F. Supp. 2d 1374, 1375 (Ct. Int'l Trade May 1, 2002)). Manifest error has also been found when there is "a discovery of important new evidence which was not available even to the diligent party at the time of trial [ ] or [ ] an occurrence at trial in a nature of an accident or unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case." *Id*.

**II.     SeAH Fails To Satisfy The High Burden For Reconsideration**

The Court correctly sustained Commerce's application of the differential pricing methodology and treatment of SeAH's inventory valuation losses. SeAH's arguments urging the Court to reconsider its decision are unavailing. Specifically, SeAH first argues that the U.S. Court of Appeals for the Federal Circuit's decision in *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021) rendered Commerce's differential pricing analysis unlawful. SeAH Mot. at 2-4. Second, SeAH argues that the Court incorrectly relied on Commerce's "flawed explanation of SeAH's account of how SeAH's cost of materials was reported" in sustaining Commerce's determination. As discussed below, SeAH's contentions are without merit.

**A.     Differential Pricing**

SeAH has not demonstrated any error, let alone "manifest error" in this Court's decision to sustain Commerce's differential pricing analysis, including the application of the Cohen's *d* test. SeAH contends that, subsequent to this Court's affirmance of Commerce's differential pricing analysis, the Federal Circuit "called into question Commerce's DPA {differential pricing analysis} in its application of the Cohen's *d* test to the data in another proceeding involving steel pipe product from Korea . . . ." SeAH Mot. at 2-3. Therefore, according to SeAH, the Court "must reconsider its April 2021 decision sustaining Commerce's DPA and rescind that aspect of its April 2021 decision and remand the case for Commerce to further explain or reconsider its application of DPA in calculating SeAH's dumping margins in this proceeding in accordance with the CAFC decision in Stupp." *Id.* at 4.

The Federal Circuit's decision in *Stupp* does not render this Court's decision "manifestly erroneous." In *Stupp*, the Federal Circuit remanded for further explanation of "whether the limits on the use of the Cohen's *d* test prescribed by Professor Cohen and other authorities were

4

satisfied in this case or whether those limits need not be observed when Commerce uses the Cohen's *d* test in {antidumping} adjudications." *Stupp*, 5 F.4th 1360. In accordance with that remand, Commerce explained:

> For the reasons explained below, Commerce finds that t*he three statistical criteria identified by SeAH (i.e., normality of distribution, number of observations, and homogeneity of the variances) are not relevant to Commerce's Cohen's d test.* These statistical criteria do not serve as the basis for Dr. Cohen's thresholds which are used to interpret the calculated value of effect size (i.e., the Cohen's d coefficient). Further, the academic literature, which the CAFC referenced, address circumstances which are outside of the context in which Commerce utilizes its Cohen's d test. Specifically, when applying the Cohen's d test, these three statistical criteria are relevant when using a sample of data to ensure that the sample statistically represents the entire population of data (i.e., the statistical significance of the analysis), but *they are not relevant because the Cohen's d test examines the entire population*.

*See* "Final Results of Redetermination Pursuant to Court's Remand*, Stupp Corp. v. United States*, Consol. Case No. 15-00034," dated April 4, 2022, at 10, available at https://access.trade.gov/Resources/remands/15-00334.pdf (*Stupp Redetermination*) (emphasis added).

In this case, Commerce similarly explained that a sample size, sample distribution and statistical significance are not relevant to Commerce's analysis and the Court properly sustained it:

> Commerce chose the Cohen's *d* test "to evaluate the extent to which the prices to a particular purchaser, region, or time period differ significantly from the prices of all other sales of comparable merchandise." Final IDM at 62 (quoting Prelim. DM at 11–12) (internal quotation marks omitted). *Commerce explained that application of the Cohen's d test was appropriate because "the U.S. sales data . . . reported to Commerce constitute[] a population. As such, sample size, sample distribution, and the statistical significance of the sample are not relevant to*

5

> *Commerce's analysis.*" *Id*. at 66. Commerce determined that of the fixed small, medium, and large thresholds of the Cohen's *d* test, 0.2, 0.5, and 0.8, respectively, application of the 0.8 large threshold was reasonable and consistent with its statutory authority because the large threshold was the strongest indicator that the difference between the mean of the test group and mean of the comparison group was significant. *Id*. *Commerce's application of the Cohen's d test to determine whether there was a significant pattern of differences was reasonable. Commerce did not need to consider sample size, sample distribution, and the statistical significance of the sample.*

*See SeAH Steel Corp. v. United States*, 513 F. Supp. 3d at 1382-83 (emphasis added) (*quoting* the Issues and Decision Memorandum (IDM) (P.R. 351)). The explanation, which this Court sustained as reasonable in this case, is consistent with the explanation that Commerce provided in the *Stupp Remand Redetermination* that was issued following the remand from the Federal Circuit.[1] Thus, there is no basis for the Court to reconsider its decision here.

### B. Treatment of Inventory Valuation Losses

Similarly, SeAH has not demonstrated any error, let alone "manifest error", in this Court's decision concerning Commerce's inclusion of SeAH's inventory valuation losses in its G&A expense calculation. Rather, SeAH merely repeats the arguments it raised during the underlying proceeding, which the Court properly rejected. Specifically, SeAH contends that contrary to Commerce's assertions, the inventory losses are related to current production since the inventory valuation loss from the prior period must be reversed in the current period to avoid double counting the raw material and work in process costs consumed in current production. SeAH Mot. at 6-7. Thus, according to SeAH, Commerce's reliance on defining the net inventory losses as periodic expenses unrelated to current production is incorrect and fails to demonstrate

---

[1] This Court has not yet ruled on the *Stupp Remand Redetermination*.

that costs are not double counted. *Id.* at 6. SeAH's contentions fail to demonstrate double counting or any "manifest error" in the Court's decision.

As Commerce explained on remand, recognizing the fiscal year inventory valuation loss does not constitute a double counting of costs. Remand Redetermination at 62-63, Dkt. No. 118. The inventory valuation losses are distinct from the historical cost of raw material inventories that are consumed in the period of review production. The fiscal year inventory valuation losses are not *directly* related to either period of review production or fiscal year production. Rather, they reflect a decline in the value of inventory on the balance sheet at the end of the fiscal year (thus, in the financial statements, it reflects a loss in the value of inventories not yet consumed). IDM at 82.

Generally Accepted Accounting Principles (GAAP) requires a company to evaluate significant assets for impairment or overvaluation so that the balance sheet is not overstated and so that expenses are recognized on the income statement as soon as they are known (*e.g.*, a company estimates what accounts receivables are unlikely to be collected and recognizes bad debt expenses; a loss in the future utility of a fixed asset is recorded as an impairment loss, *etc.*). *See, e.g.*, *Certain Carbonated and Alloy Steel Cut-to-Length Plate from Belgium*, 85 Fed. Reg. 3,028 (Dept. of Commerce January 17, 2020) (final AD admin. review; 2016-2018) and accompanying IDM at 9 ("Thus, in accordance with Belgium GAAP, Industeel is recognizing the gains and losses associated with the inventory it is currently holding on its balance sheet, which are unrelated to the inventory that was consumed in production. This provision is restated every year and depending on the quantity of inventory on hand and whether the historical cost is at or above the current market value, the company may record a net gain or loss associated with

the inventory reserve adjustment."), *available at*

*https://access.trade.gov/Resources/frn/summary/belgium/2020-00760-1.pdf*.

Contrary to SeAH's assertion, there is no double counting of expenses because the net inventory losses recorded on SeAH's GAAP-based audited income statement are periodic expenses related to a change in the value and future utility of currently held-inventory. IDM at 82. As periodic expenses, these losses relate to the general operations of the company as a whole rather than to the production process. *Id.* at 82 (citing *See, e.g.*, S*tainless Steel Wire Rod from the Republic of Korea*, 69 Fed. Reg. 19,153 (Dept. of Commerce April 12, 2004) (final admin. review) and accompanying IDM at Comment 7).

As such, these periodic raw materials and work-in-process inventory valuation losses satisfy the very definition of a G&A expense. *See Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1357 (Ct. Int'l Trade 2015) ("In calculating G&A expenses, it is Commerce's practice to include those expenses 'which relate to the activities of the company as a whole rather than to the production process.'").

As SeAH acknowledges, the inventory valuation loss is recorded to a "raw material-allowance for valuation loss on inventory" (SeAH Mot. at 6), which is a balance sheet account that offsets the inventory account to reflect the current value of inventory on hand. Remand Redetermination at 65, Dkt. No. 118; IDM at 82. Thus, the inventory allowance account reflects the total loss in value for the inventories currently on the balance sheet, but the "cost difference – raw material expense" account on the income statement only reflects the incremental change from the prior period to the current period: 1) the reversal of prior period adjustment which ensures that the losses related to inventory on hand in the previous period, but consumed in the current period are not double counted; and 2) the recognition of the adjustment for losses related

8

to inventory on hand at the end of the current period. Remand Redetermination at 65, Dkt. No. 118. Accordingly, there is no double counting.

Rather, SeAH's books and records incorporate a timing difference proscribed by GAAP that requires losses to be recognized in the period in which they are known. This is similar to other periodic impairment losses that GAAP requires a company to recognize immediately and, thus, companies have to recognize known losses in the value of balance sheet assets in the current period. This does not constitute double counting. In this regard, consistent with its practice, Commerce properly relied on a company's GAAP-based audited financial statements by recognizing the periodic expenses recorded on those fiscal year financial statements. *See, e.g.*, *Certain Carbonated and Alloy Steel Cut-to-Length Plate from Belgium*, 85 Fed. Reg. 3,028 (Dept. of Commerce January 17, 2020) (final AD admin. review; 2016-2018) and accompanying IDM at 9 ("In calculating a G&A expense ratio, Commerce normally includes period expenses, i.e., those that are more related to an accounting period and not directly related to manufacturing merchandise, as they are related to the general operations of the company as a whole."). Therefore, SeAH has failed to demonstrate any error, let alone "manifest error", in this Court's decision that sustained Commerce's inclusion of SeAH's inventory valuation losses in its G&A expenses calculation.

## **CONCLUSION**

For these reasons, we respectfully request that this Court deny SeAH's motion for reconsideration.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | s/Claudia Burke<br>CLAUDIA BURKE<br>Assistant Director |
| OF COUNSEL: | s/Hardeep K. Josan<br>HARDEEP K. JOSAN |
| MYKHAYLO GRYZLOV<br>Senior Counsel<br>Office of the Chief Counsel<br>   for Trade Enforcement & Compliance<br>U.S. Department of Commerce | Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>26 Federal Plaza, Suite 346<br>New York, New York 10278<br>Tel.: (212) 264-9245<br>Fax: (212) 264-1916<br>Email: hardeep.k.josan@usdoj.gov |
| October 31, 2022 | Attorneys for Defendant |

**CERTIFICATE OF COMPLIANCE**

    I, Hardeep K. Josan, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's response to SeAH Steel Corporation's motion for reconsideration, dated September 26, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this response complies with the word count limitation under the Court's chambers procedures, and contains 2,427 words.

                                                    /s/ Hardeep K. Josan