**Slip Op. 23-21**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEAH STEEL CORPORATION, | |
| Plaintiff, | |
| HUSTEEL CO., LTD., NEXTEEL CO., LTD., AJU BESTEEL CO., LTD., and ILJIN STEEL CORPORATION, | |
| Consolidated Plaintiffs, | |
| and | |
| HYUNDAI STEEL COMPANY and ILJIN STEEL CORPORATION, | |
| Plaintiff-Intervenors, | Before: Jennifer Choe-Groves, Judge |
| v. | Consol. Court No. 19-00086 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| UNITED STATES STEEL CORPORATION, MAVERICK TUBE CORPORATION, TENARIS BAY CITY, INC., IPSCO TUBULARS INC., VALLOUREC STAR, L.P., and WELDED TUBE USA INC., | |
| Defendant-Intervenors. | |

# OPINION AND ORDER

[Denying the motion for reconsideration.]

Dated: February 23, 2023

Jeffrey M. Winton, Michael Chapman, Amrietha Nellan, and Vi N. Mai, Winton & Chapman PLLC, of Washington, D.C., for Plaintiff SeAH Steel Corporation.

Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, Mary S. Hodgins, and Eugene Degnan, Morris, Manning & Martin LLP, of Washington D.C., for Consolidated Plaintiff Husteel Co., Ltd.

J. David Park, Henry D. Almond, Daniel R. Wilson, Leslie C. Bailey, and Kang Woo Lee, Arnold & Porter Kaye Scholer LLP, of Washington, D.C., for Consolidated Plaintiff NEXTEEL Co., Ltd. and Plaintiff-Intervenor Hyundai Steel Company.

Jarrod M. Goldfeder, Trade Pacific PLLC, of Washington, D.C., for Consolidated Plaintiff AJU Besteel Co., Ltd. and Consolidated Plaintiff and Plaintiff-Intervenor ILJIN Steel Corporation.

Hardeep K. Josan, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States. Also on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel on the brief was Mykhaylo Gryzlov, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Thomas M. Beline, Myles S. Getlan, James E. Ransdell, and Nicole Brunda, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor United States Steel Corporation.

Gregory J. Spak, Frank J. Schweitzer, Kristina Zissis, and Matthew W. Solomon, White & Case LLP, of Washington, D.C., for Defendant-Intervenors Maverick Tube Corporation, Tenaris Bay City, Inc., and IPSCO Tubulars Inc.

Roger B. Schagrin, Christopher T. Cloutier, Elizabeth J. Drake, Kelsey M. Rule,

Luke A. Meisner, Paul W. Jameson, and William A. Fennell, Schagrin Associates, of Washington, D.C., for Defendant-Intervenors Vallourec Star, L.P. and Welded Tube USA Inc.

Choe-Groves, Judge:  Plaintiff SeAH Steel Corporation ("SeAH"), Consolidated Plaintiffs Husteel Co., Ltd., NEXTEEL Co., Ltd., AJU Besteel Co., Ltd., and ILJIN Steel Corporation, and Plaintiff-Intervenors Hyundai Steel Company and ILJIN brought this consolidated action challenging the final results published by the U.S. Department of Commerce ("Commerce") in the 2016–2017 administrative review of the antidumping duty order on oil country tubular goods ("OCTG") from the Republic of Korea.  See Certain Oil Country Tubular Goods From the Republic of Korea ("Final Results"), 84 Fed. Reg. 24,085 (Dep't of Commerce May 24, 2019) (final results of antidumping duty admin. review; 2016–2017); see also Issues and Decision Mem. for the Final Results of the 2016–2017 Admin. Review of the Antidumping Duty Order on Certain Oil Country Tubular Goods from the Republic of Korea (May 17, 2019) ("Final IDM"), ECF No. 20-5.  The Court sustained the Final Results, as amended by the Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 118-1, and entered judgment for Defendant United States ("Defendant").  J., ECF No. 148; SeAH Steel Corp. v. United States ("SeAH I"), 45 CIT __, 513 F. Supp. 3d 1367 (2021); SeAH Steel Corp. v. United States ("SeAH II"), 46 CIT __, 589 F. Supp. 3d 1267 (2022).

Before the Court is the Motion for Reconsideration, ECF No. 149, filed by SeAH. SeAH moves pursuant to USCIT Rule 59(e) for the Court to reconsider and rescind the prior Opinion and Judgment, in which this Court sustained Commerce's differential pricing analysis in SeAH Steel Corp. v. United States, 45 CIT __, 513 F. Supp. 3d 1367 (2021). Mot. Recons. at 1. SeAH asserts that the Court should remand the differential pricing analysis issue due to the issuance of Stupp Corp. v. United States ("Stupp"), 5 F.4th 1341 (Fed. Cir. 2021). Id. at 2–4. SeAH argues also that the Court erred in sustaining Commerce's flawed explanation of SeAH's account of how SeAH's cost of materials was reported. Id. at 4–8. Defendant opposes SeAH's Motion for Reconsideration. Def.'s Resp. Opp'n SeAH Steel Corporation's Mot. Recons. ("Def.'s Opp'n"), ECF No. 151.

For the reasons that follow, the Court denies the Motion for Reconsideration.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history set forth in its prior opinion and recounts the facts relevant to the Court's review of the Motion for Reconsideration. See SeAH I, 45 CIT at __, 513 F. Supp. 3d at 1376–77; SeAH II, 46 CIT at __, 589 F. Supp. 3d at 1272–73.

In the Final Results, Commerce applied a differential pricing analysis and calculated SeAH's weighted-average duty margin using the alternative average-to-transaction method. Final IDM at 60–71. Commerce included inventory valuation

losses in SeAH's general and administrative ("G&A") expenses. Id. at 82–83.

The Court issued SeAH I on April 14, 2021. In SeAH I, the Court considered six Rule 56.2 motions for judgment on the agency record and nine issues presented by the Parties. See SeAH I, 45 CIT at __, 513 F. Supp. 3d at 1375–76. Relevant here, the Court held that: (1) Commerce's application of the Cohen's *d* test, the 0.8 threshold, and the 33% and 66% ratio test thresholds were in accordance with the law; Commerce's explanation for why the A-to-A method could not account for the pattern of price differences in SeAH's sales was in accordance with the law; and Commerce's use of the alternative A-to-T method to calculate SeAH's dumping margin was in accordance with the law, id. at __, 355 F. Supp. 3d at 1379–85; and (2) Commerce's decision to include SeAH's inventory valuation losses as G&A expenses was not supported by substantial evidence because Commerce did not cite relevant record evidence, id. at __, 355 F. Supp. 3d at 1405–06.

The U.S. Court of Appeals for the Federal Circuit issued Stupp on July 15, 2021, remanding Commerce's use of the Cohen's *d* test for further explanation as to "whether the limits on the use of the Cohen's *d* test prescribed by Professor Cohen and other authorities were satisfied in this case or whether those limits need not be observed when Commerce uses the Cohen's *d* test in . . . adjudications." Stupp, 5 F.4th at 1341, 1357–60.

In the Remand Results, Commerce continued to include inventory valuation losses in SeAH's G&A expenses. Remand Results at 24–27.

In SeAH II, the Court sustained Commerce's inclusion of SeAH's inventory valuation losses in SeAH's G&A expenses ratio because Commerce provided further explanation with additional details and citations to record evidence that sufficiently demonstrated that the inventory valuation losses were recognized as actual in SeAH's normal books and records. SeAH II, 46 CIT at __, 589 F. Supp. 3d at 1285–88. The Court entered judgment for Defendant.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of an antidumping duty order. The Court will hold unlawful any determination found to be unsupported by substantial record evidence or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

SeAH asks the Court to reconsider its decision affirming Commerce's differential pricing analysis and inclusion of SeAH's inventory valuation losses in SeAH's G&A expense ratio. Mot. Recons. at 2. Defendant argues that there is no

basis for the Court to reconsider its decision regarding the differential pricing analysis and inventory valuation losses. Def.'s Opp'n at 4–9.

USCIT Rule 59(e) provides that:

> A motion to alter or amend a judgment must be served no later than 30 days after the entry of the judgment.

USCIT R. 59(e). "The major grounds justifying a grant of a motion to reconsider a judgment are an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice." Ford Motor Co. v. United Sates, 30 CIT 1587, 1588 (2006) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

### I. Commerce's Use of the Cohen's *d* Test

In Stupp, the U.S. Court of Appeals for the Federal Circuit ("CAFC") remanded Commerce's use of the Cohen's *d* test for further explanation because the data Commerce used may have violated the assumptions of normality, sufficient observation size, and roughly equal variances. 5 F.4th at 1357–60. The CAFC addressed Commerce's argument that Commerce does not need to worry about normality because it is using a population instead of a sample, stating that Commerce's argument "does not address the fact that Professor Cohen derived his interpretive cutoffs under the assumption of normality." Id.

Commerce applied its two-step differential pricing methodology in this case, the first step of which was the Cohen's $d$ test. See Prelim. Decision Mem. ("Prelim. DM") at 11–13, PD 274 (Oct. 3, 2018); Final IDM at 5–6, 71 (applying the same methodology as in the Prelim. DM without change to its differential pricing methodology). The standard of review for considering Commerce's differential pricing analysis is reasonableness. Stupp, 5 F.4th at 1353. The CAFC and the U.S. Court of International Trade have held the steps underlying the differential pricing analysis as applied by Commerce to be reasonable. See e.g., Mid Continent Steel & Wire, Inc. v. United States, 940 F.3d 662, 670–74 (Fed. Cir. 2019) (discussing zeroing and the 0.8 threshold for the Cohen's $d$ test); Apex Frozen Foods Priv. Ltd. v. United States, 40 CIT __, __, 144 F. Supp. 3d 1308, 1314–35 (2016) (discussing application of the A-to-T method, the Cohen's $d$ test, the meaningful difference analysis, zeroing, and the "mixed comparison methodology" of applying the A-to-A method and the A-to-T method when 33–66% of a respondent's sales pass the Cohen's $d$ test), aff'd, 862 F.3d 1337 (Fed. Cir. 2017); Apex Frozen Foods Priv. Ltd. v. United States, 862 F.3d 1322 (Fed. Cir. 2017) (affirming zeroing and the 0.5% *de minimis* threshold in the meaningful difference test). However, the CAFC has stated that "there are significant concerns relating to Commerce's application of the Cohen's $d$ test . . . in adjudications in

which the data groups being compared are small, are not normally distributed, and have disparate variances." Stupp, 5 F.4th at 1357.

The Cohen's *d* test is "a generally recognized statistical measure of the extent of the difference between the mean of a test group and the mean of a comparison group." Apex Frozen Foods, 862 F.3d at 1342 n.2. The Cohen's *d* test relies on assumptions that the data groups being compared are normal, have equal variability, and are equally numerous. See Stupp, 5 F.4th at 1357. Applying the Cohen's *d* test to data that do not meet these assumptions can result in "serious flaws in interpreting the resulting parameter." See id. at 1358.

The Court concludes that SeAH has not raised a ground justifying a grant of its Motion for Reconsideration of the judgment. Commerce's use of a population, rather than a sample, in the application of the Cohen's *d* test sufficiently negates the questionable assumptions about thresholds that were raised in Stupp. As this Court considered in SeAH I, Commerce explained in the Final IDM that "application of the Cohen's *d* test was appropriate because 'the U.S. sales data . . . reported to Commerce constitute[] a *population*. As such, sample size, sample distribution, and the statistical significance of the sample are not relevant to Commerce's analysis.'" 45 CIT at __, 513 F. Supp. 3d at 1382–83 (emphasis added) (quoting Final IDM at 66). Based on Commerce's explanation, this Court concluded in SeAH I that "Commerce's application of the Cohen's *d* test to

determine whether there was a significant pattern of differences was reasonable. Commerce did not need to consider sample size, sample distribution, and the statistical significance of the sample." Id. The concerns described in Stupp that might be raised when the Cohen's $d$ test is applied to samples are inapplicable because in this case, Commerce applied the Cohen's $d$ test to a population.

　　　　SeAH has not presented a ground justifying reconsideration of the judgment pursuant to USCIT Rule 59(e) and the Court will not disturb its previous decision regarding Commerce's use of its differential pricing analysis, in particular its application of the Cohen's $d$ test. The Court denies SeAH's Motion for Reconsideration as to the differential pricing analysis issue.

## II.　Inventory Valuation Losses

　　　　SeAH argues that Commerce's inclusion of inventory valuation losses in its G&A expense ratio is unsupported by substantial evidence and the Court should reconsider and reverse its conclusion sustaining Commerce's determination. Mot. Recons. at 7–8.

　　　　SeAH provides no new controlling law, evidence, or arguments but instead continues to dispute Commerce's determination. See id. at 4–8. SeAH repeats its arguments, which the Court considered already, that SeAH's cost calculations reflected the full historical cost of the raw-materials and work-in-process inventories used in production and including SeAH's inventory valuation losses in

calculating SeAH's costs resulted in double counting of SeAH's actual cost of materials. Id. at 4–5. SeAH asserts that the Court erred in relying on Commerce's explanation of SeAH's account of how SeAH's cost of materials was reported. Id. Because the Court evaluated SeAH's arguments, Commerce's explanation, and the record evidence already in SeAH I and SeAH II and SeAH has not presented a ground justifying reconsideration of the judgment pursuant to USCIT Rule 59(e), the Court will not disturb its previous decision regarding Commerce's treatment of SeAH's inventory valuation losses. The Court denies SeAH's Motion for Reconsideration as to the inventory valuation losses issue.

## CONCLUSION

For the foregoing reasons, the Court denies the Motion for Reconsideration as to the Cohen's *d* test and inventory valuation losses. Accordingly, it is hereby

**ORDERED** that the Motion for Reconsideration, ECF No. 149, is denied.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: February 23, 2023
New York, New York